UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| JAMES ABENGOWE, } | |
| } | |
|    Plaintiff, } | |
| } | |
| v. } | Case No.: 5:16-cv-00137-MHH |
| } | |
| MCM SERVICES, INC., and MARK } | |
| MCINTOSH, } | |
| } | |
|    Defendants. | |

## MEMORANDUM ON PARTIAL MOTION TO DISMISS

Plaintiff James Abengowe filed a lawsuit against defendants MCM Services, Inc. and Mark McIntosh for racial harassment under section 1981 and for intentional infliction of emotional distress (outrage) under Alabama law.[1]  The defendants in this case have filed a partial motion to dismiss Mr. Abengowe's outrage claim, arguing that Mr. Abengowe's complaint is insufficient as a matter of Alabama law to support a claim for outrage.  (Doc. 3).

### I.  STANDARD OF REVIEW

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Pursuant to Rule 8(a)(2), a complaint must contain, "a short and plain

---

[1] In Alabama, intentional infliction of emotional distress is generally referred to as the tort of outrage.  *See Ex Parte Crawford & Co.*, 693 So. 2d 458, 460 (Ala. 1997).

1

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Generally, to survive a [Rule 12(b)(6)] motion to dismiss and meet the requirement of Fed. R. Civ. P. 8(a)(2), a complaint need not contain 'detailed factual allegations,' but rather 'only enough facts to state a claim to relief that is plausible on its face.'" *Maledy v. City of Enterprise*, 2012 WL 1028176, at *1 (M.D. Ala. Mar. 26, 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). In deciding a Rule 12(b)(6) motion to dismiss, a court must view the allegations in a complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). A court must accept well-pled facts as true. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff James Abengowe has been an employee at defendant MCM Services, Inc. since July 2015. (Doc. 1, ¶ 9). MCM is a mechanical contractor that engages in HVAC services. (Doc. 1, ¶ 10). Defendant Mark McIntosh owns MCM and is Mr. Abengowe's direct supervisor. (Doc. 1, ¶ 11).

Mr. Abengowe alleges that Mr. McIntosh has subjected Mr. Abengowe to racial harassment and a racially hostile work environment throughout Mr.

2

Abengowe's employment with MCM. (Doc. 1, ¶ 12). The racial harassment and discrimination includes racial slurs, racially derogatory comments, and disparate treatment on the basis of race. (Doc. 1, ¶ 13). The racially harassing slurs and "conduct by the owner and supervisors," includes the repeated and routine use of the words "nigger" and "coon." (Doc. 1, ¶ 14). Mr. McIntosh allegedly made the following remarks and comments:

> "[T]he best place for niggers is in the bottom of a hole."
>
> "Fuck that stupid nigger. Let him fry. We will get us another coon tomorrow."
>
> "[T]hat stupid nigger not worth nothing anyway. Nobody will miss him."
>
> Mr. McIntosh told Mr. Abengowe that he was "just a nigger with a broom."
>
> Mr. McIntosh repeatedly used the phrase "nigger please."
>
> Mr. McIntosh repeatedly told Mr. Abengowe that he was "going to fire your nigger ass."
>
> Mr. McIntosh has asked, "[D]o you need more niggers or wetbacks to finish the job?"
>
> Mr. McIntosh has told Mr. Abengowe, "I knew you were a stupid ass nigger."
>
> Mr. McIntosh repeatedly refers to Mr. Abengowe as "nigger James."
>
> Mr. McIntosh has stated, "[N]igger James' [sic] stupid ass can't go. Send nigger James back. A nigger sitting around looking stupid will fuck the money up. You don't need him. Send nigger James back home."

(Doc. 1, ¶¶ 17-20, 24, 29, 34, 36, 37).

Mr. Abengowe also alleges that Mr. McIntosh made numerous other racially derogatory comments around and towards Mr. Abengowe.  This conduct has occurred throughout Mr. Abengowe's employment and continues to occur.  (Doc. 1, ¶ 39).  MCM has had actual and constructive knowledge of the harassment and has failed to take prompt and effective remedial action to cure the harassment.  (Doc. 1, ¶ 42).  MCM did not provide Mr. Abengowe with any policy prohibiting discrimination or establishing a complaint procedure for harassment.  (Doc. 1, ¶ 43).

Based on the above conduct, Mr. Abengowe filed this federal lawsuit against MCM and Mr. McIntosh, asserting claims for racial harassment under 42 U.S.C. § 1981 and for outrage under Alabama law.

The defendants have filed a partial motion to dismiss Mr. Abengowe's outrage claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 3).  The defendants concede that Mr. Abengowe states a claim for racial harassment under section 1981; however, the defendants argue that because mere words do not give rise to a claim of outrage under Alabama law, the Court should dismiss Mr. Abengowe's outrage claim.  Mr. Abengowe argues that Alabama law does not preclude an outrage claim under the facts in this case and that the Court should deny the defendants' motion to dismiss because the defendants' conduct was so

outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society. (Doc. 5). The motion has been fully briefed and is ripe for the Court's consideration.

### III. DISCUSSION

The tort of outrage requires a plaintiff to demonstrate that the defendant's conduct "'(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it.'" *Little v. Robinson*, 72 So. 3d 1168, 1172 (Ala. 2011) (citing *Am. Rd. Svc. Co. v. Inmon*, 394 So. 2d 361 (Ala. 1980)). "[O]utrage is a very limited cause of action that is available only in the most egregious circumstances." *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1044 (Ala. 1993). As to the second element of outrage—which is the only element that the defendants contest—an outrage claim is appropriate only when the conduct alleged is so "outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Tinker v. Beasley*, 429 F.3d 1324, 1329-30 (11th Cir. 2005) (citing *Inmon*, 394 at 365).

The defendants cite to *Potts v. Hayes*, 771 So. 2d 462 (Ala. 2000), in which the Alabama Supreme Court stated that it has recognized the tort of outrage "in

5

regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context, *Whitt v. Hulsey*, 519 So. 2d 901 (Ala. 1987); (2) barbaric methods employed to coerce an insurance settlement, *National Sec. Fire & Cas. Co. v. Bowen*, 447 So. 2d 133 (Ala. 1983); and (3) egregious sexual harassment, *Busby v. Truswal Sys. Corp.*, 551 So. 2d 322 (Ala. 1989)."[2]  *Potts*, 771 So. 2d at 465.  The defendants argue that because racial harassment is not among the categories that the Alabama Supreme Court has recognized in the outrage context, Mr.

---

[2] The *Busby* court held that the following conduct—which relates to the defendant's behavior toward four different female employees—was sufficiently extreme and outrageous to support an outrage claim:

> [The defendant]: (1) invited Busby and Money to swim in his pool in the nude with him; (2) told Busby that his hands were cold and asked if he could put them in her pockets to keep them warm; (3) told the plaintiffs that he would "put a stick on their machines" so they could masturbate while working; (4) said that he could perform intercourse as fast as one of the machines at the plant could operate; (5) said that he wished that the plaintiffs would come to work braless and wear less clothing; (6) told one of the plaintiffs that if she had not stayed up all night having sex she could do her work properly; (7) told one employee that if she would give him 30 minutes with her that he would fill her pants in nine months for her; (8) acted as if he was going to pinch one plaintiff's breasts with a pair of pliers and with his hands; (9) said that he should send one of the plaintiffs across the street to where a group of men were standing because she stayed sexually aroused all of the time; (10) told one of the plaintiffs that he was very tired and asked her if she would accompany him to the restroom and hold his penis while he urinated; (11) told one of the plaintiffs that her nipples were as large as another employee's entire breasts; (12) attempted to follow one of the plaintiffs into the restroom and when she asked him where he was going, said that he was going to help her; (13) followed one of the plaintiffs one night; (14) said that a table in his office had been damaged when one of the plaintiffs and a male co-employee had sex on top of it; (15) openly stared at the plaintiffs' sexual anatomy; (16) put his arm around the plaintiffs, grabbed their arms, and stroked their necks; and (17) made other lewd remarks and gestures to the plaintiffs.

*Busby*, 551 So. 2d at 324.  The Alabama Supreme Court made its finding in *Busby* on a review of the trial court's grant of summary judgment for the defendant.  *Id.*

6

Abengowe's outrage claim fails as a matter of law. Mr. Abengowe correctly points out, however, that the *Potts* categories of outrage are not exhaustive and that "the success of each case will depend on the extreme and severe nature of the conduct found in each case." (Doc. 5, p. 2). On this point, in *Little v. Robinson*, the Alabama Supreme Court qualified *Potts* by stating the following:

> That is not to say, however, that the tort of outrage is viable in only the three circumstances noted in *Potts*. Recently, this Court affirmed a judgment on a tort-of-outrage claim asserted against a family physician who, when asked by a teenage boy's mother to counsel the boy concerning his stress over his parents' divorce, instead began exchanging addictive prescription drugs for homosexual sex for a number of years, resulting in the boy's drug addiction. *See O'Rear v. B.H.*, 69 So. 3d 106 (Ala. 2011). It is clear, however, that the tort of outrage is viable only when the conduct is "'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'" *Horne v. TGM Assocs., L.P.*, 56 So. 3d 615, 631 (Ala. 2010) (quoting *Inmon*, 394 So. 2d at 365).

*Little*, 72 So. 3d at 1172-73. Thus, the relevant question is not whether the alleged conduct falls within one of the *Potts* categories, but whether the alleged conduct is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."

"Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." *McGinnis v. Am. Home Mortgage Servicing, Inc.*, No. 14-13404,

7

2016 WL 1105394, at *11 (11th Cir. Mar. 22, 2016).  The defendants argue that even if racial harassment were an actionable vehicle for this tort, mere words, no matter how crude, do not give rise to a cause of action for outrage.  A survey of the relevant case law indicates that the defendants' proposition is too broad.  Namely, the fact that alleged conduct contains only words does not necessarily preclude a claim for outrage.  A more appropriate characterization of the defendants' proposition is that "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient to create liability for outrage. *Surrency v. Harbison*, 489 So. 2d 1097, 1105-06 (Ala. 1986) (citing Restatement (Second) of Torts, § 46, Comment (d) (1965)).

The Court finds that the allegations in Mr. Abengowe's complaint are sufficient to state a claim for outrage under Alabama law.  The language that Mr. Abengowe describes in his complaint is deeply offensive.  Mr. Abengowe alleges that Mr. McIntosh frequently used the words "nigger" and "coon" in a vile and disparaging manner and that Mr. McIntosh directed the words towards Mr. Abengowe, his subordinate employee.  Mr. Abengowe asserts that these verbal assaults have occurred for at least seven months and are ongoing.  A jury reasonably could conclude that the conduct, if proven, goes beyond all bounds of decency and may be fairly regarded as atrocious and utterly intolerable in a civilized society.  There is no meaningful distinction between the conduct alleged

in the complaint and egregious sexual harassment, a mode of conduct that often involves derogatory language and is designed to disparage and belittle the target of the speaker's remarks. *See*, *e.g.*, *Livingston v. Marion Bank & Trust Co.*, 30 F. Supp. 3d 1285, 1324 (N.D. Ala. 2014); *see also Jones v. Kent Sales & Serv. Corp.*, 2012 WL 4226125 (N.D. Ala. Sept. 17, 2012); *Allen v. Cypress Village, LTD*, 2011 WL 2559614, at *3 (M.D. Ala. June 27, 2011).[3]

The defendants argue that because Mr. Abengowe's outrage claim presents a novel issue of state law, the Court should exercise its discretion under 28 U.S.C. § 1367(c)(1) in declining to exercise supplemental jurisdiction over Mr. Abengowe's outrage claim. The Court declines the invitation. As the *Busby*, *Livingston*, and *Jones* decisions indicate, there is nothing particularly novel about Mr. Abengowe's outrage theory.

---

[3] Like the defendants in *Allen*, the defendants in this case rely on a case that was decided at the summary judgment stage, *Burden v. Int'l Longshoremen's Ass'n, Local No. 1410*, 510 F. Supp. 2d 618 (S.D. Ala. 2007). The defendants' conduct in *Burden* is distinguishable from Mr. McIntosh's conduct. The evidence supporting the plaintiff's outrage claims in *Burden* was as follows. On one occasion, one defendant picked up the plaintiff, firmly pressed his body against hers, and made a sexual statement. A different defendant twice told the plaintiff that "he heard that she had a million dollar fuck;" "made a statement about twenty dollar women;" and "said a man could give her twenty dollars for sexual privileges." *Id.* at 626. The court in *Burden* viewed each defendant's conduct separately and determined that the defendants' respective conduct was insufficient to support an outrage claim against either defendant. The conduct in *Burden* was limited to one incident with respect to the first defendant and four incidents with respect to the second defendant. Mr. McIntosh, on the other hand, is alleged to have made many more offending statements (according to Mr. Abengowe's complaint, Mr. McIntosh has used the word "nigger" more than 25 times and has done so frequently throughout Mr. Abengowe's employment at MCM).

## IV. CONCLUSION

Based on the allegations in the complaint, which the Court views in the light most favorable to Mr. Abengowe on the defendants' motion to dismiss, the Court is satisfied that Mr. Abengowe has adequately alleged conduct that forms the basis for a colorable outrage claim under Alabama law. Therefore, the Court denies the defendants' motion to dismiss.

**DONE** and **ORDERED** this April 22, 2016.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE